IOLA G. NORWOOD v. DAVID CARTER AND WIFE, VIRGINIA CARTER.

(Filed 20 April, 1955.)

**1. Deeds § 16c—**

The evidence in this case *is held* sufficient to be submitted to the jury on the issue of grantee's breach of covenant to support grantor for her lifetime, constituting the consideration of the grantor's conveyance to him.

**2. Contracts § 25—**

The measure of damages for breach of contract is the amount which will compensate the injured party for the loss which fulfillment of the promise could have prevented or the breach of it entailed, so that the parties may

be placed as near as may be in the same monetary condition they would have occupied had the contract not been breached.

**3. Deeds § 16c—**

The measure of damages for breach of covenant to support grantor for her lifetime, constituting the consideration of the grantor's conveyance, is the reasonable value of the services agreed to be rendered, with the burden on plaintiff to introduce evidence of facts, circumstances, and data as to the reasonable value of such services, and where the damages are predicated solely upon plaintiff's allegation that it would cost defendant as much as $100 a month to pay for such services, a new trial must be awarded, since no substantial recovery may be based on mere guesswork or inference.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Grady, Emergency Judge,* November Term 1954 of WAKE.

This was an action to recover damages for breach of contract for services to be rendered as consideration for conveyance of land.

The plaintiff is a widow of sixty-two years of age, without children. On 22 March, 1951, she executed a deed to the defendant David Carter, her nephew, for a 53-acre tract of land in Wake County, reserving life estate therein to herself, reciting as consideration the defendant's agreement to provide for and support the plaintiff "whenever she is in need, or upon the request from her to do so, for the term of her natural life."

The plaintiff testified that the defendant agreed, if she would make him a deed for the land, he would "come there and stay there with me and be a companion to me and help me and look after me . . . if I got sick they (defendant and his wife) would wait on me and attend to me and look after my welfare;" that after the execution of the deed, defendant came to the farm, built a house near her house, and with his wife lived there (though he did not complete the house) from May until September 1951, when he left and went to Newport News, Virginia, to work, and has rendered no further service to her. "He has been down to my house about one time since."

Plaintiff further testified that she owned two other small farms in Wake County; that after defendant left she could not stay there and went to one of her farms on which her brother (since deceased) resided near Rolesville, several miles away, and built a house there, where she is now living. She testified: "My kin people are up there. When I have to have a doctor or medicine or groceries or wood, they look out for that, but with the understanding, of course, that I can take care of myself . . . I have got two nieces and a nephew that look after me."

Plaintiff also testified she did not know the value of the 53-acre tract; that she looked after her own farming arrangements, engaging tenants

and making settlements; that she rented out the 53 acres, that she gave the rent of the place where she now lives to her relatives "because they were taking care of me." She did not know how much these rents amounted to. "It is not amounting to much."

The deed which the plaintiff made to the defendant was drawn by her attorney who testified he drew it in accordance with what he understood the agreement to be; that no money was passed, and that the consideration was as stated in the deed, and he was to live there on the place.

No other evidence was offered by the plaintiff.

The defendant offered no evidence.

The following issues were submitted to the jury:

"1. Did the defendant fail and refuse to carry out the terms and conditions of the contract which formed the consideration for the deed executed by the plaintiff to defendant and referred to in the pleadings?

"2. If so, what was the reasonable value per month of the services which the defendant was to perform for the plaintiff?"

On the second issue the court charged the jury as follows:

"The complaint in this case, gentlemen, is based upon a monthly consideration, she alleging the services to her, the things that he promised to do and which he failed to do, cost her if he had to pay for them as much as $100 a month. However, gentlemen, that is a question for you to determine. The defendant contends that it was not worth anything like $100.00 a month and that, even though you should answer the first issue YES, that you ought to answer the second issue only in some small sum of money which you, in your good, sound judgment should find from the evidence that he ought to pay her now for his breach of contract. That is purely a question of fact for you gentlemen, and now you may retire and see how you find it."

The jury answered the first issue "Yes" and the second "$100.00."

Thereupon, it was adjudged that the plaintiff recover of defendant $3,800, that being the amount which would be due at $100 per month from October 1, 1951 to November 30, 1954 (date of trial).

It was also ordered that the land be sold, subject to plaintiff's life estate, to pay this judgment.

Defendant excepted and appealed.

*Armistead J. Maupin for plaintiff, appellee.*
*Yarborough & Yarborough for defendant, appellants.*

DEVIN, J. The evidence offered by the plaintiff was sufficient to support the verdict on the first issue, and to show that the defendant David Carter breached the terms of the covenant upon which the con-

veyance of the land was made to him. Hence the plaintiff was entitled at least to nominal damages.

But we think there was error in the court's charge to the jury on the second issue, the issue directed to the question of the value of the services defendant was obligated to perform. According to the record, the portion of the charge hereinbefore quoted constituted the entire charge of the court on this issue. The allegation in the complaint that "the services to her, the things that he promised to do and which he failed to do, cost her if he had to pay for them as much as $100 a month" seems to have been submitted to the jury and apparently understood by them as affording the only basis for determining the amount of recovery. No evidence was offered as to the value of the services which defendant had contracted to furnish and had failed to render, or what loss or expense the plaintiff has been caused to suffer in order to obtain services substantially equal to those the defendant had obligated himself to perform. *Lunsford v. Marshall,* 230 N.C. 610, 55 S.E. 2d 194; *In re Atkinson,* 225 N.C. 526, 35 S.E. 2d 638. No rule or standard for the admeasurement of damages was given.

Where breach of contract has been established, the general rule is that the measure of damages is the amount which will compensate the injured party for the loss which fulfillment of the contract could have prevented or the breach of it has entailed. *Monger v. Lutterloh,* 195 N.C. 274, 142 S.E. 12; *Caldwell v. McCorkle,* 225 N.C. 171, 33 S.E. 2d 878; 50 A.J. 885.

The injured party is entitled to compensation for his loss and to be placed as near as this can be done in money in the same condition which he would have occupied had the contract not been breached. *Perkins v. Langdon,* 237 N.C. 159 (169), 74 S.E. 2d 634; *Troitino v. Goodman,* 225 N.C. 406, 35 S.E. 2d 277; *Chesson v. Container Corp.,* 216 N.C. 337, 4 S.E. 2d 886.

The damages for failure to furnish services in accordance with the contract therefor are measured by the actual loss sustained as a natural and proximate consequence. And when the contract is to perform specific services, this ordinarily means the reasonable cost of securing performance by other means. And where the contract for support has been breached, the injured party would be entitled to recover as damages the value of the services agreed to be rendered. 25 C.J.S. 580, 582.

A covenant for future services as consideration for a deed imposes a legal obligation on the grantee, and the remedy for breach is an action for damages. *Bowen v. Darden,* 233 N.C. 443, 64 S.E. 2d 285. "The proper measure of damages in such action is the value of the promised support lost by the grantor." *Minor v. Minor,* 232 N.C. 669, 62 S.E. 2d 60.

"However, where actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed. No substantial recovery may be based on mere guesswork or inference; without evidence of facts, circumstances, and data justifying an inference that the damages awarded are just and reasonable compensation for the injury suffered." 25 C.J.S. 496.

The other exceptions noted by defendants and brought forward in their assignments of error need not be considered as we think there should be a

New trial.

BARNHILL, C. J., took no part in the consideration or decision of this case.